*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0561**


State of Minnesota,
Appellant,

vs.

Abigail Rae Trulson,
Respondent.


**Filed August 22, 2016
Reversed and remanded
Bjorkman, Judge**


Dakota County District Court
File No. 19HA-CR-15-2460

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Jackie Warner, Assistant County Attorney, Hastings, Minnesota (for appellant)

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for respondent)

        Considered and decided by Bjorkman, Presiding Judge; Kirk, Judge; and

Kalitowski, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## UNPUBLISHED OPINION

**BJORKMAN**, Judge

Appellant State of Minnesota challenges the district court's grant of a downward durational departure arguing that there are no substantial and compelling reasons to justify the departure. We reverse and remand for imposition of a presumptive sentence.

## FACTS

Between April 1, 2015, and May 10, 2015, respondent Abigail Rae Trulson provided in-home personal-care services for a boy in Eagan and a woman in Burnsville. During that time, Trulson stole numerous items from the boy, including gift certificates, DVDs, and video games. Trulson stole three rings and two necklaces from the woman. The aggregate value of the stolen items was $2,080.

The state charged Trulson with felony theft of property with an aggregate value greater than $1,000 but less than $5,000. Trulson pleaded guilty to the charged offense, acknowledging that there was no agreement regarding her sentence. The presumptive sentence is a stayed prison term of one year and one day—a felony disposition.

At sentencing, Trulson moved for a downward durational departure. The state opposed the motion, arguing there are no offense-specific mitigating factors. The district court granted the motion, imposing a stayed 365-day sentence, and placing Trulson on probation for two years. The district court stated that the departure was warranted because the thefts were motivated by Trulson's drug addiction and she is amenable to probation. The district court noted that this was Trulson's first adult offense and that she was only 20 years old. The state appeals.

**D E C I S I O N**

**I.  The district court abused its discretion by granting a downward durational departure.**

The Minnesota Sentencing Guidelines establish sentencing ranges that are presumed to be appropriate. *State v. Soto*, 855 N.W.2d 303, 308 (Minn. 2014).  The district court must impose a sentence within the applicable range unless substantial and compelling circumstances distinguish the offender or the offense and "overcome the presumption in favor of the guidelines sentence." *Id*.

We generally review a district court's decision whether to depart from a presumptive sentence for an abuse of discretion. *Dillon v. State*, 781 N.W.2d 588, 595 (Minn. App. 2010), *review denied* (Minn. July 20, 2010).  But "the question of whether the district court's reason for the departure is 'proper' is treated as a legal issue" that we review de novo. *Id*.  The district court must state its reasons for departing in writing or on the record at the time of sentencing. *State v. Geller*, 665 N.W.2d 514, 516 (Minn. 2003).  If the stated reasons are legally sound and supported by the record, we will affirm. *Id*.

The presumptive sentence in this case is a stayed sentence of one year and one day. Minn. Sent. Guidelines 4.A (2014).  The district court stayed execution of a 365-day sentence—a gross misdemeanor disposition.  Such a sentence is a downward *durational* departure. *State v. Bauerly*, 520 N.W.2d 760, 762 (Minn. App. 1994) (stating that the imposition of a 365-day gross-misdemeanor sentence on a felony conviction is a downward durational departure), *review denied* (Minn. Oct. 27, 1994).  Only *offense-related* factors can support a durational departure. *State v. Peter*, 825 N.W.2d 126, 130 (Minn. App. 2012)

3

("Caselaw is settled that offender-related factors do not support durational departures."), *review denied* (Minn. Feb. 27, 2013). In other words, "[a] downward durational departure is justified only if the defendant's conduct was significantly less serious than that typically involved in the commission of the offense." *State v. Solberg*, __ N.W.2d __, __, 2016 WL 4051620, at *4 (Minn. July 27, 2016) (quotation omitted).

**Stated Reasons for Departure**

At sentencing, the district court stated that it was departing durationally because Trulson is only 20 years old, this is her first adult offense, and she is amenable to probation. And the district court noted that Trulson's actions were motivated by her drug addiction, which "affect[ed] the nature of the offense." The state argues that these offender-related factors do not support a downward durational departure. We agree.

Three of the district court's sentencing bases—Trulson's age, criminal history, and amenability to probation—are clearly personal characteristics that are in no way related to the nature of the offense. *State v. Behl*, 573 N.W.2d 711, 713 (Minn. App. 1998) (stating that a defendant's amenability to probation does not support a durational departure), *review denied* (Minn. Mar. 19, 1998); *Bauerly*, 520 N.W.2d at 762 (holding that age and lack of felony record are not valid grounds for durational departures).[1] Because offender-related factors cannot support the district court's durational departure, we must determine whether Trulson's drug addiction is an offense or an offender-related factor.

---

[1] We recognize that personal characteristics may support a dispositional departure, but Trulson received a durational departure. *See State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982) (stating that offender-related factors, such as amenability to treatment or probation, age, and cooperation, may be considered when imposing a dispositional departure).

The district court stated, without explanation, that Trulson's drug addiction affected the nature of the offense. Likewise, Trulson fails to explain how her addiction renders her conduct less serious than conduct associated with a typical felony theft offense. Minn. Sent. Guidelines 2.D.3.a.(5) (2014) (stating that a departure may be supported by circumstances that mitigate an offender's culpability). We are not persuaded that Trulson's specific motive for stealing from her victims distinguishes her crime from other theft offenses. Individuals who commit theft presumably do so for many different reasons that are specific to them. This demonstrates why a person's motivation to steal is an offender-related factor. Moreover, as the state points out, chemical dependency is generally not an appropriate factor to consider when deciding whether to depart durationally. *State v. Gardner*, 328 N.W.2d 159, 162 (Minn. 1983) ("Defendant's chemical dependency problem and his dangerousness are not the sort of factors which can be relied upon as justifying a durational departure.").

Trulson also argues that her conduct was less culpable because she lacked substantial capacity for judgment due to her drug addiction. Minn. Sent. Guidelines 2.D.3.a.(3) (2014). But she fails to point to anything in the record that indicates she lacked capacity for judgment when she committed the thefts. And the guidelines provision that Trulson relies on specifically states, "[t]he voluntary use of intoxicants (drugs or alcohol) does not fall within the purview of this factor." *Id.* On this record, we conclude that Trulson's age, criminal history, amenability to probation, and drug addiction are not valid bases for a downward durational departure.

**Other Evidence in the Record**

Although the district court's stated reasons for the departure are not proper, we examine the record to determine if it contains sufficient evidence to justify a durational departure. *Geller*, 665 N.W.2d at 516 ("If the reasons given are improper or inadequate and there is insufficient evidence of record to justify the departure, the departure will be reversed." (quotation omitted)). Trulson argues that the departure is valid because of her remorse and the relatively low value of the items she stole. We disagree.

"[A] defendant's remorse generally does not bear on a decision to reduce the length of a sentence." *Solberg*, 2016 WL 4051620, at *5. Remorse may only be considered in this context when it "bears on a determination of the cruelty or seriousness of the conduct on which the conviction was based." *Id*. at *6 (stating that linking remorse back to the offense itself "will not be an easy task"); *see also Bauerly*, 520 N.W.2d at 763 (noting that remorse is relevant to durational departures when it relates back to the seriousness of the offense). While Trulson may feel genuine remorse for her actions, nothing in the record relates her remorse back to the offense or reflects any effort to lessen the impact of her crime. Trulson acted alone and on her own behalf each time she stole from the victims. We cannot discern how her subsequent remorse has any bearing on the seriousness or cruelty of her offense.

Trulson cites *Bauerly* for the proposition that a durational departure is proper when the dollar value of stolen property is closer to the low end of the statutory-offense range. In *Bauerly*, we held that Bauerly's remorse—which related back to the seriousness of the offense—and the "significantly lower amount of property involved" in the theft supported

a downward durational departure. 520 N.W.2d at 763. We are not persuaded that *Bauerly* supports the district court's departure in this case.

Unlike in *Bauerly*, Trulson stole property with an aggregate value of more than twice the minimum amount required for conviction of the charged offense. Bauerly stole property worth between $671 and $854, and was convicted of theft of property with a value of $500 to $2,500. *Id*. at 761, 763 (citing Minn. Stat. § 609.52, subds. 2(1), 3(3)(a) (1992)). Trulson stole property valued at $2,080 and was convicted of theft of property with a value of $1,000 to $5,000. Minn. Stat. § 609.52, subds. 2(a)(1), 3(3)(a) (2014). More importantly, *Bauerly* did not involve aggravating facts that are present here. Indeed, the evidence supports a finding that Trulson's conduct was more—not less—serious than that associated with a typical theft. Trulson's victims were vulnerable due to their age and physical condition. Minn. Sent. Guidelines 2.D.3.b.(1) (2014). Both victims relied on Trulson to care for them; she used her position of trust to commit the offense. Minn. Sent. Guidelines 2.D.3.b.(4) (2014). And Trulson committed the thefts in the victims' homes, where they had a unique expectation of privacy. Minn. Sent. Guidelines 2.D.3.b.(14) (2014). In sum, the evidence establishes that Trulson's offense was not substantially less serious than the typical theft.[2] Accordingly, we reverse the sentencing departure and remand to the district court for imposition of a guidelines sentence.

---

[2] We acknowledge the district court's motivation to give Trulson a chance to rehabilitate and restore the community without facing the consequences of a felony conviction. *See* Minn. Stat. § 609.13, subd. 1(1) (2014) (providing that a felony conviction is deemed to be a gross misdemeanor conviction if the sentence imposed is within the statutory limits for gross misdemeanors). But the law provides that offender-related characteristics cannot support a downward durational departure. *Peter*, 825 N.W.2d at 130.

**II.    Trulson received the benefit of her plea agreement.**

Trulson argues that if we reverse her sentence she is entitled to withdraw her guilty plea because she did not receive the benefit of her plea agreement. Stated another way, Trulson contends that her ability to argue for a durational departure was a condition of her plea. We disagree.

To determine whether a plea agreement was violated, we look to what the parties reasonably understood to be the terms of the agreement. *State v. Brown*, 606 N.W.2d 670, 674 (Minn. 2000). Determining what the parties agreed to is a question of fact, but interpreting and enforcing plea agreements are questions of law that we review de novo. *Id*.

It is undisputed that the parties' plea agreement did not include an agreed-upon sentence. Trulson acknowledged in her plea petition that she was pleading guilty to felony theft and would argue for a gross misdemeanor disposition. The plea petition also indicates that the state would argue for the guidelines felony sentence. At the plea hearing, Trulson acknowledged these terms and stated that she understood there were no promises or guarantees regarding her sentence. And at sentencing, each party argued for the disposition that was noted in the plea petition. Because both parties fulfilled the agreement, we conclude that Trulson received the benefit of her plea agreement.

**Reversed and remanded.**